# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

APRIL ANTHONY                                    *CIVIL ACTION NO. 07-2096

VERSUS                                           *MAGISTRATE JUDGE HILL

SCHOOL BOARD OF IBERIA PARISH, ET AL.   *BY CONSENT OF THE PARTIES

## REASONS FOR JUDGMENT

Pending before the court is the Motion to Dismiss and Motion for Summary Judgment filed by defendants the Iberia Parish School Board ("the Board"), Joel J. Dugas, Elvin Pradia, Dan L. LeBlanc, Sr., Mary B. Davis, Robbie J. LeBlanc, Clara D. Carrier, Jessie J. McDonald, Richard L. Denison, Jr., Edwin J. Buford, Jr., Blaine A. Meche, Mary Fay L. Freshley, Rev. Arthur L. Alexander, Danny D. Segura, and David W. Romero (collectively the "Board Members"), Eugene Baudry ("Baudry"), Roger Hamilton ("Hamilton") and Willie Mae Jefferson ("Jefferson"). [rec. doc. 48].  Plaintiff, April Anthony ("Anthony"), has filed opposition [rec. doc. 54].  Oral argument on the Motion was held on November 18, 2009 and the matter was taken under advisement.

Anthony filed this civil rights action on behalf of her minor son, Jamail Ledet ("Ledet"), on December 4, 2007.  In her original *pro se* Complaint and in her First Supplemental and Amending Complaint (filed by counsel), Anthony asserts that Ledet's civil rights were violated when he was suspended from Pesson Elementary School ("Pesson") as a result of an incident which occurred on campus on January 24, 2007.  Plaintiff's claims are asserted under 42 U.S.C. § 1983 and Louisiana state law. More specifically, with respect to her federal claim,

Anthony asserts that Ledet's right to due process under the Fourteenth Amendment to the United States Constitution was violated.

By the instant Motion, the Board, seeks summary judgement based on the plaintiff's failure to allege or demonstrate that Ledet's alleged constitutional deprivations were caused by an official policy, custom or procedure of the Board.  The Board Members seeks dismissal and summary judgment based on the plaintiff's failure to allege or demonstrate that they were involved in, or were aware of, Ledet's suspension.  Hamilton, Baudry and Jefferson seek summary judgment based on plaintiff's failure to demonstrate a violation of Ledet's constitutional rights.  They further contend that  they are each entitled to qualified immunity.  All defendants additionally seek dismissal based on prescription.

## Factual Background

The record before this court demonstrates that on January 24, 2007, Pesson teacher, Mrs. Green ("Green"), observed Pesson student, Larvon Godette ("Godette"), who had been denied recess privileges and was accordingly sitting in the hall with other disciplined students, showing the other students an object which he was pulling out of his jacket. Upon request, Green retrieved a clear plastic bag containing a white powdery substance from Godette's jacket.

After Godette was taken to the office, both Green and Pesson guidance counselor, Mrs. Polk-Shaw ("Polk-Shaw"), questioned Godette.  At that time, Godette admitted bringing the white powder to school and implicated several other students as having handled or tasted the

2

substance during the two recess periods that day.  These students included Ledet, Deandre

Lumpkin, Keshawn Jones, Brayton Leightner, Skyler Boutte, and Eric Lumpkin.  With respect

to Ledet, Godette stated that he had given the bag containing the white powdery substance to

Ledet and that Ledet had brought it to the restroom.  Godette told this same story, not only to

Green and Polk-Shaw, but also the sheriff detective (Annette P. Derise) who investigated the

incident.  Godette's  story is further corroborated by the notes of the interview of Brayton

Leightner who, when interviewed regarding the incident, stated that at lunch time, Ledet went

into the bathroom, and that Ledet had the bag containing the white powdery substance in his

hand.

          After receiving this information from Godette, all of the students who had been

implicated were called to the office and questioned by Green and Polk-Shaw, as well as Pesson

teachers Ms. Prather and Ms. James.  Green states by affidavit that the students gave

conflicting statements, and that Ledet was the only one who denied any involvement.  She

further states that Ledet's claim of innocence was not consistent with some of the other

participants.  Indeed, the evidence before this court indicates that both Godette and Brayton

Leightner implicated Ledet, stating that Ledet had possession of the plastic bag at some point

during the day and had taken that bag into the restroom.  Green's statement submitted to

principal Jefferson, dated January 24, 2007, further confirms that the students had advised

them that Ledet took the bag from Godette and brought it to the restroom. Polk-Shaw's

statement dated January 24, 2007 indicates that the students said that there had been two

groups who entered the bathroom, one group around lunch time and a second group around evening break time.  Unfortunately, her statement does not say which students where in each group.

During this time period, Pesson Principal Jefferson was off campus.  Polk-Shaw contacted the student services department at the school board office and spoke to lead child welfare and attendance officer, Roger Hamilton.  Hamilton advised that the parents of the implicated students needed to be contacted and that the police needed to be contacted so that the white powdery substance could be tested and identified.  As it was nearing the end of the day, all of the implicated children, except Godette, who had admitted to having brought the white powdery substance to school, were dismissed.  Godette remained in the office until the police and his mother arrived.  Then, Godette and his mother left with the police.

Upon her return to the school, principal Jefferson observed police units and members of the press present. She requested that Green, Polk-Shaw, James, the french teacher and the school secretary write a report about the incident.  Jefferson testified by deposition that after reviewing  these reports, she surmised that the incident had disrupted the school by taking two to three teachers and the school secretary from their duties, and had consumed two hours of instructional time for the entire school.  Accordingly, Jefferson initially suspended all of the students who were involved for three days for disturbing instruction, pending a parent-principal conference, except Godette, who was immediately suspended for five days pending a

4

hearing, a matter upon which she had no choice, given that Godette admitted to having brought the white powdery substance to school.

Jefferson's testimony that she suspended the implicated students, except Godette, for disturbing school is supported by the notes (activity documentation) of the parent-teacher conferences with the children and their parents: Ledet's indicates "3 or more days suspended. Mother is questioning the school disturbance"; Eric Lumpkin's and Skyler Boutte's indicates "3-5 days suspension.  This will be on school files as school disturbance"; Deandre Lumpkin's indicates "suspended for creating a school disturbance"; and Brayton Leightner's indicates "suspended for creating a school disturbance".

During the next few days, Jefferson met with each student and their parents.  The Anthony and Ledet conference occurred on January 26, 2007.  According to Jefferson, all parents, except the parent of Keshawn Jones and Anthony, did not object to their child's suspension.  However, because of their objection to the suspension, Jones and Ledet were scheduled for an administrative hearing to determine whether each child's suspension would be upheld.  Jefferson additionally noted that an administrative hearing was necessary in Ledet's case because of the conflicting testimony of Ledet (who proclaimed innocence) and the other students (who implicated Ledet).  In accordance with school policy, Jefferson testified that their suspensions were extended an additional two days pending the hearing.

Review of the Behavior Reports of the three who appeared for the hearing completed on January 24, 2007 supports Jefferson's testimony.  Ledet's Behavior Report indicates that Ledet

5

was subject to disciplinary action because he "Disturbs School/Violates Rules" and

"Miscellaneous."  The remark section of the form indicates "Student involved in an incident of

a serious nature."  The form contains a box to indicate that disciplinary action was being taken

for "Use/Possess Controlled Substance," however, this box is **not** marked.

The Behavioral Report of Keshawn Jones likewise does not indicate that he was subject

to disciplinary action for "Use/Possess Controlled Substance", but rather that his disciplinary

action was being taken because he "Disturbs School/Violates Rules" and "Miscellaneous", for

involvement in an incident of a "serious nature."  On the other hand, Godette's Behavior

Report indicates the he was being suspended for five days based on "Use/Possess Controlled

Substance",  with remarks indicating that he had brought a tiny zip-loc bag containing a white

substance to school and allowed other students to sample the contents.  Accordingly, the

Sheriff's Office had been contacted and a hearing was to be scheduled.

The Student Hearing Requests completed after the parent-principal conferences also

supports Jefferson's testimony.  These forms indicate the reason for the suspension of both

Ledet and Jones was not "Use/Possession Controlled Substance",  but, rather, both were being

suspended for five days pending a hearing because each had "Disturb[ed] School/Violate[d]

Rules" and engaged in "Miscellaneous" conduct.  Both forms are dated January 26, 2007.  The

actions requiring a hearing for Ledet, who denied any involvement, indicates that he stood

accused of tasting and handling an "unknown substance" and taking it to the restroom, while

Jones' hearing was based on his admission to having tasted an unknown substance and the

accusation that he requested more be brought to the school.

6

Godette's Student Hearing Request indicates the reason for his suspension was, unlike Ledet and Jones, the "Use/Possession Controlled Substance", as well as his having "Disturb[ed] School/Violat[ed] Rules".   Godette's hearing was to be  based on his having had a white substance in a zip-loc bag at school.  His five day suspension was additionally noted to be pending receipt of an official report from the Sheriff's Office regarding the nature of the substance.

Anthony's testimony regarding what transpired at the parent-teacher conference does not directly contradict Jefferson's testimony or the documents generated in connection with Ledet's suspension.  She initially testified that she was told that Ledet was suspended because he had tasted and seen a white powdery substance and he did not report it.  When directly asked if she was ever told that Ledet was suspended because he was guilty of possession of a controlled and dangerous substance, Ledet responded " I don't remember exactly what - - what they - - what it was - - they said of a serious nature. They said it was drugs.  I don't know.  I really don't remember exact - - the exact.  I don't remember." [Anthony deposition at pg. 30].

She also testified, when asked if she had any papers in her possession indicating her son had been suspended for possession of a controlled dangerous substance, that she did not know and was not sure what the papers said. [*Id*. at pg. 31]. Later in her deposition, she, in response to questioning as to whether she had anything in her possession accusing Ledet of being in possession of a controlled substance, Anthony responded "Not - -I don't - - the paperwork I have. I'm not sure what it - - what it said or if it said a controlled - - I'm really not sure." [*Id*. at

pg. 44]. She further testified that she learned that there would be a hearing at the parent-teacher conference. [*Id*. at 34].

By letter from Assistant Superintendent Harvison, dated January 29, 2007, Anthony received written notice of the hearing "relative to the suspension of Jamail Ledet . . . for disturbing school, violating school rules and miscellaneous misbehaviors (handling and testing a possible controlled substance)" scheduled for February 1, 2007.

On January 30, 2007, the Acadiana Criminalistics Laboratory determined that the white powdery substance possessed by Godette was crushed acetaminophen (aspirin).

All three hearings were held on February 1, 2007.  Ledet's administrative hearing was conducted by the Supervisor of the Child Welfare and Attendance Department of the school system and Superintendent's Designee David Neuner, Hamilton and Ms. French, the Drug Free and Safe Schools Coordinator.  Jefferson, Polk-Shaw and Green were also in attendance.

During Ledet's hearing, Jefferson, Green and Polk-Shaw gave their version of the incident.  Thereafter, Ledet was given an opportunity to present his side of the story and was questioned by both Mr. Neuner and Hamilton.  Anthony was also given an opportunity to question the witnesses.  Indeed, in response to Anthony's question regarding who had seen Ledet with the bag, Polk-Shaw stated that Godette had told her he had given the bag to Ledet.  Mr. Neuner further advised that other involved students had said Ledet had the bag as well.

The administrative hearing committee upheld all three students' suspensions.  The committee also placed the students on probation for the remainder of the school year, and, in

8

the event of violation, Jefferson was granted expulsion privileges.  The children were also prohibited from attending extra-curricular activities, and were required to attend a SAFE program.  At the conclusion of Ledet's hearing, Mr. Neuner advised that Anthony had five days to appeal the decision, and "since it is only a suspension, the superintendent would make the final decision."

Godette's testimony at his hearing was consistent with his statement to Polk-Shaw, Green and the police, that is, that he had brought the white powdery substance to school, had given the plastic bag containing the substance to Ledet and that Ledet left with it.  However, he also testified, contrary to Green, that he wasn't "playing drug dealer" as suggested by Neuner, opening his jacket showing the bag to other children.  Rather, he stated that the other children saw the bag and asked for it.  This testimony was found not credible by Hamilton.

At his administrative hearing, which occurred after Godette's and before Jones', Ledet denied any involvement in the incident, admitting only that he saw Godette give the bag to Jones at recess.  Polk-Shaw countered Ledet's testimony stating that the child who brought the bag (Godette) said Ledet took it to the bathroom. The committee, noting that Godette's and Ledet's testimony conflicted, upheld Ledet's suspension.

At the final hearing, Jones admitted that he had tasted the substance while in the bathroom with Larvon.  He further stated that Ledet was not in the bathroom at that time.  Although Neuner commented that he felt Jones was "more honest" than the first two students

9

(Godette and Ledet) and commended Jones for his honesty, Jones' suspension was nevertheless upheld by the administrative committee.

Ledet was advised, in writing, by Charles Harvison, the Assistant Superintendent of Administration, of the results of the administrative hearing "relative to the suspension of Jamail Ledet" by letter dated February 5, 2007.  She was further advised of her right to appeal the decision of the administrative hearing committee to the Superintendent within five days.

By letter dated February 5, 2007, Anthony, through her attorney, appealed the decision. By letter dated February 12, 2007, noting that La.R.S. 17:416 grants the Superintendent the authority to uphold, reverse or alter the terms of any suspension, Superintendent Baudry upheld Ledet's suspension.

Thereafter, a meeting occurred between Ledet's attorney, defense counsel Mr. Landry and Assistant Superintendent Harvison.  Harvison testified that although Ledet's suspension had been upheld, as a concession to Ms. Ledet and her counsel, the remaining disciplinary actions were rescinded.  This is reflected in a letter from Harvison to Ledet dated March 19, 2007.  In a further concession, by letter dated March 29, 2007, Ledet was advised by Harvison that although Ledet's suspension had been upheld on appeal, the administration of Pesson Elementary School would be directed to expunge the suspension from Ledet's record. Noting that he was not quite sure of all of the information they had at the meeting, Harvison speculated that these concessions could have been made due to extenuating circumstances based on the fact that the white powder was not a controlled substance, the testimony of the

10

student, the mother, that maybe Ledet was remorseful and that maybe Ledet wasn't involved in the touching and tasting the substance.

The March 29, 2007 letter further confirmed that Ledet had been given an opportunity to make-up all classwork that he had missed during his absence.  This understanding was confirmed by Jefferson, who testified by deposition that she had given all students involved in the incident an opportunity to make-up missed work.  However, Anthony disputes that was, in fact, the case, testifying in her deposition that Jefferson never told her Ledet could make up his work and that she "never seen nothing that he [Ledet] did to show that he made up the work", relying on Ledet's poor grades as evidence, and further testifying that she did not remember getting the March 29, 2007 letter addressed to her residence, suggesting that maybe her attorney had received it.

### Rule 12(b)(6) Motion to Dismiss Standard

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); F.R.C.P. 12(b)(6).

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view

11

them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

However, this principle is subject to some limitations.  First, conclusory allegations and unwarranted deductions of fact are not accepted as true.  *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir. 1982)  *citing Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *Collins*, 224 F.3d at 498.  Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974.  The plaintiff's obligation is "to provide the 'grounds' of his 'entitlement to relief' [and] requires more than mere labels and conclusions." *Id*. at 1964-1965 *citing Papasan*, 478 U.S. at 286.   The allegations must be sufficient "to raise a right to relief above the speculative level"; "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. at 1965 *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004).  If a plaintiff fails to allege facts sufficient to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id*. at 1974.

## I.  Board Members – Individual Capacity

Review of Anthony's Complaint and First Supplemental Complaint reveals that plaintiff has failed to allege sufficient facts to present a legally cognizable federal claim, plausible on its face, against any of the Board Members in their individual capacities.  Accordingly, these claims will be dismissed.

Supervisory public officials cannot be held liable under § 1983 on any theory of vicarious liability.  To be liable under §1983, a supervisory public official  must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights.  *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999).[1]

Here, both the Complaint and Amended Complaint are devoid of any factual allegations against any Board Member delineating any act or omission which could suggest personal involvement in Ledet's alleged Due Process violation.   To the contrary, their names are mentioned solely in the introductory paragraphs of plaintiff's Amended Complaint wherein each is named as a defendant in this action. [rec. doc. 13, ¶ 3].  Furthermore, there are no allegations that the circumstances surrounding Ledet's suspension were ever reported to the Board Members or that they were ever aware of the complained of suspension.  To the

---

[1]*See also Doe v. Taylor Independent School* District, 15 F.3d 443, 454 (5th Cir. 1994) (in the context of student sexual abuse case, delineating the personal involvement of school supervisory officials for imposition of personal liability as requiring a showing that the defendant knew of the facts or of a pattern of inappropriate behavior, demonstrated deliberate indifference towards the student by failing to take action and that this failure caused constitutional injury to the student.).

contrary, the evidence before this court demonstrates that Ledet's suspension was ultimately

upheld by Superintendent Baudry, and that his case was never appealed or presented to the

Board (or its members) following that decision.  In sum, there are no allegations and no

evidence before this court that any Board Member individually took part in the suspension of

Ledet.

Moreover, there is no allegation that any Board Member implemented any

unconstitutional policy or procedure.  Indeed, plaintiff has adduced no evidence of the

existence of any such unconstitutional policy.  To the extent that plaintiff relies upon the

Board's alleged policy with regard to suspensions, Harvison testified that the Board's policy is

based on Louisiana Revised Statue 17:416.  Federal and state courts have long upheld the

constitutionality of the procedure set forth by that statute.  *Murray v. West Baton Rouge Parish

School Board*, 472 F.2d 438, 442-443 (5th Cir. 1973); *Bonner v. Lincoln Parish School Board*,

685 So.2d 432, 434 (La. App. 2nd Cir. 1996) *citing Whiteside v. Kay*, 446 F.Supp. 716 (W.D.

La. 1978) and *Williams v. Turner*, 382 So.2d 1040 (La. App. 2nd Cir. 1980); *Trahan v.

Baudoin*, 252 So.2d 740, 743 (La. App. 1st Cir. 1971).

For these reasons, the Board Members, in their individual capacities, will be dismissed

for failure to state a claim upon which relief my be granted.

### Standard on Motion for Summary Judgment

Fed.R.Civ.Proc. Rule 56(c)(2) provides that summary judgment "should be rendered if

the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

14

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed.R.Civ.Proc. Rule 56(e)(2) provides, in pertinent part, as follows:

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

The defendants' Motion for Summary Judgment is properly made and supported.  Thus, Anthony may not rest upon her allegations or denials in her pleadings, but rather must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986).

However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).  Additionally, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial.  *Celotex*, 106 S.Ct. at 2552.

Anthony has submitted evidence in opposition to the instant Motion.  However, Anthony's evidence fails to demonstrate that there is a genuine issue of material fact for trial.  Accordingly, summary judgment with respect to Anthony's federal claims asserted against the

Board, the Board Members, Baudry, Hamilton and Jefferson is appropriate in this case for the following reasons.

## II.  School Board

Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible. *Doe v. Dallas Independent School District*, 153 F.3d 211, 215 (5ᵗʰ Cir. 1998) *citing  Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) and *Spann v. Tyler Indep. Sch. Dist.*, 876 F.2d 437, 438 (5th Cir.1989). Thus, "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id. citing Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and 1B Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims and Defenses § 7.5 (3d ed.1997). Under *Monell* and its progeny, a municipal governmental body may be held liable under § 1983 when  "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 215-216 *citing Monell,* 436 U.S. at 694, 98 S.Ct. 2018 and 1B Schwartz & Kirklin, *supra.*, § 7.5.  Thus, such a claim requires *Monell* proof of an official policy or custom as the cause of the constitutional deprivation.[2]  *Eugene v. Alief Indep. School Dist.,* 65 F.3d 1299, 1304 (5ᵗʰ

-------

[2]In *Monell,* the Court held that local governmental entities may be sued under §1983.  However, they may not be held vicariously liable under the doctrine of *respondeat superior*.  Thus, a governmental entity may not be held liable merely because it employs a tortfeasor.  Liability must be based upon allegedly unconstitutional conduct which "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or is] visited pursuant to governmental 'custom' even though such a custom

Cir. 1995)*; see also Turner v. Houma Municipal Fire & Police Civil Service Board*, 229 F.3d 478, 483 fn 10 (5th Cir. 2000) *citing Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Campbell v. City of San Antonio*, 43 F.3d  973, 977 (5th Cir. 1995).

"An official policy, for purposes of § 1983 liability, is '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'" *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) *quoting  Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (*en banc*).

 Courts have defined custom as a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Campbell*, 43 F.3d at 977 *citing Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984); *Matthias v. Bingley*, 906 F.2d 1047, 1054 (5th Cir. 1990).

In her Amended Complaint, Anthony does not allege any official policy or custom of the School Board to support liability.  Moreover, in response to the defendants' discovery, Anthony lists no policies which she believes were defective or responsible for the injuries allegedly caused by this incident, instead objecting to the relevance of the question.

However, in opposition to the instant Motion for Summary Judgment, Anthony cites School Board Policy H-3.5b, which sets forth the procedure for dealing with possession of

---

has not received formal approval through the body's decision making channels." *Id*. at 690-91.

alcohol, drugs or contraband within Iberia Parish Schools, as the basis for the Board's liability herein.  During oral argument, plaintiff's counsel expounded upon his theory arguing that for application of this policy, the principal must have had reasonable cause to believe that Ledet was in possession of a controlled dangerous substance, which plaintiff asserts was lacking in this case.  Thus, plaintiff contends that Ledet was denied his right to be free from punishment in the absence of personal guilt.  Counsel further argued that this policy, which is based on La. R.S. 17:416, was not complied with because Ledet was not granted an opportunity to appeal his suspension to the School Board as provided by section C of the statute.

Initially, the court notes that plaintiff does not argue that policy H-3.5b is in any way deficient, nor does plaintiff argue that the statutory basis for that policy, La. R.S. 17:416, is constitutionally deficient.  Indeed, that argument is foreclosed since the constitutionality of the statute has been repeatedly upheld.  *See  Murray*, *Bonner*, *Whiteside*, *Williams,* and *Trahan, supra.*  Thus, plaintiff has failed to establish an issue of material fact which would preclude summary judgement on her claim against the Board based on any unconstitutional policy.

Plaintiff's argument is that the policy was misapplied by Jefferson, Hamilton and Baudry in Ledet's case. However, in this case, there are no allegations or evidence of any persistent, widespread practice for purposes of  liability based on any municipal custom, precluding summary judgment herein.  Even if the policy was misapplied, the singular incident described herein is insufficient. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) *citing  Snyder v. Trepagnier,* 142 F.3d 791, 798-99 (5th Cir.1998) and  *Belt*, 828 F.2d at

304-305; *Brummett v. Camble,* 35 F.3d 560 (5ᵗʰ Cir. 1994) *citing  Fraire v. City of Arlington,*

957 F.2d 1268, 1278 (5ᵗʰ Cir.)*, cert. denied,* 113 S.Ct. 462 (1992); *City of Oklahoma City v.*

*Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality opinion)

("[W]here the policy relied upon is not itself unconstitutional, considerably more proof than

the single incident [of unconstitutional conduct forming the basis of the section 1983 action]

will be necessary in every case to establish both the requisite fault on the part of the

municipality, and the causal connection between the 'policy' and the constitutional

deprivation.") (footnotes omitted); *Board of the County Comm'ns of Bryan County v. Brown*,

520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (holding that a Sheriff's isolated

decision to hire a deputy who had past criminal history involving violence which ultimately

resulted in the use of excessive force by the employee was not sufficient to impose liability on

the governmental entity because imposing such liability would be tantamount to imposing

vicarious liability.  Rather, the Sheriff must have necessarily concluded that the future use of

force was the "plainly obvious consequence of the decision to hire the applicant"  in order to

establish deliberate indifference to the constitutional rights of citizens.)

Furthermore, while plaintiff alleges in ¶ 25 of her Amended Complaint that the Board

negligently failed to properly train employees, negligently failed to hire employees who do not

violate rights and negligently failed to develop and administer policies regarding training and

hiring and policies concerning protection of student's rights, it is well settled that negligence

alone is insufficient to state a Constitutional claim; allowing such a theory to go forward would

result in *de facto respondeat superior* liability – a result rejected by the Supreme Court in *Monell*.   *See Doe v. Dallas Independent School Dist*., 153 F.3d 211, 217 (5th Cir. 1998) (noting that a school board's liability arises only upon an intentional act, not merely a negligent oversight); *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1204-1206 (1989) (adopting a deliberate indifference standard for municipal liability in a failure to train case); *Doe v. Taylor Independent School District,* 15 F.3d 443, 453 (5th Cir. 1994) (discussing *Canton*'s adoption of a deliberate indifference standard for municipal liability in rejecting a gross negligence standard for supervisory liability); *Board of the County Comm'ns of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (requiring deliberate action attributable to the municipality itself for imposition of municipal liability in the context of a singular hiring decision).  *See also Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986) (negligent conduct, even though causing injury, does not constitute a deprivation under the Due Process Clause).

Moreover, plaintiff's argument is contrary to the evidence before this court.  Plaintiff argues that Ledet was suspended for possession of a controlled substance.  However, the record establishes that Ledet was suspended by Jefferson for disturbing the school and violating school rules, as well as miscellaneous misbehavior, namely, being involved in an incident of a "serious nature", tasting an unknown substance while role playing as if he was involved in illicit drug activity.

20

Louisiana law expressly authorizes principals, like Jefferson, to suspend students who disturb the school, violate school rules, and who commit a "serious offense."  La.R.S. 17:416(A)(3)(a)(vii) and (xvii).  Ledet never stood accused by Jefferson of possessing a controlled substance as plaintiff suggests.  While Harvison suggested that Ledet's suspension and subsequent administrative hearing was conducted pursuant to policy H-3.5b, that testimony preceded his being shown Ledet's Behavioral Report.  After being shown that Report, Harvison testified that Ledet was suspended because he disturbed school and violated school rules since he had been involved in an incident of a "serious nature".  Thus, citation to the Student controlled substance policy is unavailing.

Furthermore, even if Ledet had been suspended pursuant to policy H-3.5b, the record demonstrates that the policy was fully complied with in this case.  Ms. Green had probable cause to request that Godette surrender the packet of white powdery substance that she saw Godette showing the other children, and her actions were authorized by section II(C)(1) of the policy.  At that point, Polk-Shaw, the acting principal in Jefferson's absence, contacted his parent, Hamilton and law enforcement, the confiscated packet was sent to the Acadiana Crime Lab for analysis and Godette was suspended for five days pending an administrative hearing in accordance with section III(B)(1) and of the policy.

Furthermore, because of the investigation which was conducted, including the discussions with Godette and the other students who had been implicated, school officials could have properly proceeded against Ledet under section III of the policy.  The procedure set

21

forth therein may be initiated "upon reasonable cause." Policy H-3.5b § III(B)(1). It is clear that school officials had "reasonable cause" to believe that Ledet had possession of the plastic bag containing the white powdery substance based on the statements of both Godette and Brayton Leightner, as well as the statement of Green wherein she indicated that "the students said that Jamail had taken the bag from Larvon and brought it to the bathroom."

Moreover, while plaintiff seems to suggest that there was no evidence that Ledet was in the bathroom based on Jones' statement, both Godette and Brayton Leightner indicated that Ledet was in the bathroom.  Further, Polk-Shaw indicated in her statement that there had been two groups which entered the bathroom at different times, one of which apparently included Ledet.  Based on this "reasonable cause", Anthony was contacted, a parent-teacher conference was set and, thereafter, an administrative hearing was scheduled.  Hamilton and law enforcement had already been contacted and the substance had already been sent to the crime lab for analysis. The cited policy requires nothing more.

Anthony also takes issue with an alleged failure to allow consideration of Ledet's suspension by the entire School Board.  However, this argument is based on plaintiff's erroneous assumption that Jefferson had recommended Ledet for expulsion.  Jefferson recommended Ledet suspension only,  the discipline Ledet ultimately received.  La.R.S. 17:416 sets forth the grounds and procedure for both suspending and expelling a student. *Bonner,* 685 So.2d at 434.  Under state law, in cases where the student is merely suspended and not expelled, review of the disciplinary decision is limited to review by the Superintendent.

La.R.S. 17:416A(3)(c) ("Any parent . . . of a pupil suspended shall have the right to appeal to the city or parish superintendent of schools or his designee, who shall conduct a hearing on the merits.  The decision of the superintendent is final, reserving to the superintendent of schools the right to remit any portion of the time of suspension."); *Trahan*, 252 So.2d at 742-743 (upholding the constitutionality of section A of the statute limiting "review by the Superintendent of an imposed suspension" because the "Legislature deemed it wise to involve the Superintendent and the School Board [only] in matters of expulsion and limit the involvement in matters of suspension to review by the Superintendent."); *Bonner*, 685 So.2d at 435 (noting that under section A(c)(3) "the decision of the superintendent on the merits of the case, as well as the term of suspension shall be final.").  That was the case herein.[3]

In reaching this conclusion, the undersigned notes that there was considerable confusion during the depositions of Hamilton and Harvison as to the basis for Ledet's suspension, the subsequent administrative hearing and the applicable appeal process.  However, Hamilton ultimately made the distinction between the appeal process in suspension and expulsion cases

---

[3]Subsection B of the statute grants the principal discretion to recommend expulsion for any offense and mandates such a recommendation for any student found possessing any controlled dangerous substance governed by the Uniform Controlled Dangerous Substances Law.  In such cases, where expulsion has been recommended, the procedures set forth in subsection C of the statute apply.  17:416B(1)(a) and (1)(b)(i).  Under subsection C, the parent of the student may request the school board to review the superintendent's findings. 17:416(C)(4).  Additionally, in the case of a fifth grade student found guilty of possession of a controlled substance, the matter is referred to the school board through recommendation for action by the superintendent.  17:416(C)(2)(c)(ii).

These statutory provisions are reflected in policy H-3.5b.  Section III(B)(3)(a)(3) provides that in the event that any fifth grade student is found guilty of possession of a controlled substance, the matter is referred to the school board through recommendation for action by the superintendent.  Section IV(A) provides that any student who is expelled for possession of a non-prescription drug containing a controlled substance may appeal to the full Iberia Parish School Board for placement at the alternative school.

Plaintiff has not established that any of these provisions applies to Ledet because expulsion was never recommended or imposed.

23

stating that "on a suspension the appeal will go to the superintendent, and his decision is final",

adding that "according to the state law that I've read, a suspension goes to the superintendent,

and whatever the superintendent decides is final. An expulsion goes to the Board." [Hamilton

deposition at pg. 17]. Likewise, while Harvison testified that Ledet was suspended pursuant to

La.R.S. 17:416, he was not able to state the "category" in the statute (subsection A, B or C)

under which Ledet was suspended. [Harvison deposition at pg. 38-39]. Moreover, upon further

questioning, and after being shown Ledet's Behavioral Report, Harvison clarified that Ledet

was suspended for "disturb[ing] school and violating the school rules and miscellaneous,

student involved in an incident of a serious nature."  [Harvison deposition at pg. 46-47].   F

     While not argued by plaintiff, to the extent that plaintiff complains that Ledet was not

permitted to make-up his school work during his suspension in violation of Jefferson's policy

to allow students to do so, that claim is equally unavailing.  Jefferson is not an official

policymaker for the Board, nor is there any evidence that final policy-making authority had

been delegated to her.  *See Rousselle v. Plaquemines Parish School Board*, 633 So.2d 1235,

1241 (La. 1994) *citin*g La.R.S. 17:81(C) and 17:51(noting that the Louisiana legislature

entrusts the management of parish public schools to school boards which are authorized to

make rules and regulations not inconsistent with Louisiana law or those regulations set forth by

the State Board of Elementary and Secondary Education).

     Finally, at the time of Ledet's suspension, state law mandated that suspended students

receive no credit for school work missed during the student's period of suspension.  That law

was not changed until 2009, well after Ledet's suspension at issue herein.  *See* La. Acts 2009,

No. 240, § 1, amending La.R.S. 17:416(A)(3)(e).

In light of the above, summary judgment on plaintiff's claim against the Board will be

granted.

## III. Board Members, Hamilton, Baudry and Jefferson – Official Capacity

An official capacity suit is the equivalent of a suit against the entity of which the officer

is an agent.  *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S.

464, 471-472 (1985); *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991); *McMillian v. Monroe County,*

*Ala.,* 520 U.S. 781, 784-85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)[4] ; *Burge v. St. Tammany*

*Parish,* 187 F.3d 452, 466 (5th Cir. 1999). Thus, such a claim requires *Monell* proof of an

official policy or custom as the cause of the constitutional deprivation.  *Turner v. Houma*

*Municipal Fire & Police Civil Service Board*, 229 F.3d 478, 483 fn. 10 (5th Cir. 2000) *citing*

*Monell v. Department of Social Services*, 436 U.S. 658 (1978).  In light of the above, plaintiff

has failed to demonstrate that Ledet suffered a constitutional deprivation as a result of any

official policy or custom of the Board.  Accordingly, summary judgment will be granted herein

---

[4]The Supreme Court in *McMillian* explained that:

a suit against a governmental officer "in his official capacity" is the same as a
suit " 'against [the] entity of which [the] officer is an agent,' "  *Kentucky v.*
*Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) *quoting*
*Monell v. New York City Dept. of Social Servs*., 436 U.S. 658, 690, n. 55, 98
S.Ct. 2018, 56 L.Ed.2d 611(1978) and that victory in such an "official-capacity"
suit "imposes liability on the entity that [the officer] represents,"  *Brandon v.*
*Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

*McMillian,* 520 U.S. at 785 n. 2, 117 S.Ct. 1734.

with respect to the official capacity claims asserted against the Board Members, Hamilton, Baudry and Jefferson.

## IV.  Hamilton, Baudry and Jefferson – Individual Capacity

To prevail on a claim under § 1983, the plaintiff must satisfy two elements: first, that she was deprived of a right or interest secured by the Constitution and laws of the United States, and second, that the deprivation occurred by someone acting under the color of state law.  *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 203 (5th Cir. 1996) *citing Flagg Bros, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978)*;  Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994) (citations omitted).   In this case, Anthony has failed to demonstrate that Ledet was deprived of a Constitutional right by Hamilton, Baudry or Jefferson.

It is not disputed that student disciplinary actions must be attended by due process safeguards. *See Whiteside*, 446 F.Supp. at 719 *citing Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729 (1975).  It is also undisputed that students have a substantive due process right not to be punished in the absence of personal guilt*.  St. Ann v. Palisi*, 495 F.2d 423, 425 (5th Cir. 1974). However, even though both of these rights were clearly established at the time of Ledet's suspension, in light of the above analysis, it is clear that Ledet was afforded all the due process (procedural and substantive) which was due him and that he was not punished in the absence of personal guilt.

To the contrary, Jefferson, Hamilton and Baudry followed the Louisiana statutory procedure in suspending Ledet, and while Ledet was not suspended pursuant to School Board policy H-3.5b for possession of a controlled substance, their actions were nevertheless in compliance with that policy as well.

Jefferson suspended Ledet pursuant to La.R.S. 17:416A(3)(a)(vii) and (xvii) which authorizes suspension of students who disturb school, violate school rules and commit serious offenses.  Both Ledet and his parent, Anthony, were advised of the conduct of which Ledet stood accused.  Notice was given to Anthony and a parent-teacher conference was held.  Ledet was given an opportunity to explain his version of the facts prior to the administrative hearing on two occasions, at the initial conference with Green, Polk-Shaw, Prather and James, and again during the parent-teacher conference with Jefferson, as required by La.R.S. 17:416(A)(3)(b)(I).

An administrative hearing was held, where Ledet was granted yet another opportunity to explain his version of the incident, and Ledet's appeal of the adverse administrative decision was upheld by superintendent Baudry pursuant to La.R.S.17:416(A)(3)(c).  The fact that concessions were made after the proceeding had concluded does not alter, nor in any way diminish, the adequacy of due process provided Ledet in connection with his suspension by Jefferson, the administrative hearing at which Hamilton was one of three presiders or the subsequent denial of his appeal by Baudry.

27

This procedure also comported with constitutional rules of due process of law established by the United States Supreme Court in *Goss v. Lopez*.[5]  Under *Goss*, students, like Ledet, facing temporary suspension of ten days or less must be given oral or written notice of the charges against them and, if the student denies the charges, an explanation of the evidence the authorities have and an opportunity to present his side of the story.  *Goss*, 419 U.S. at 581 and 584.  These requirements were met in this case.

Furthermore, Ledet was not punished in the absence of personal guilt.  Because this substantive due process right is not specifically protected by the Constitution, rational basis scrutiny is applicable.  *Swindle v. Livingston Parish School Board*, 2008 WL 5157727, *4 (M.D. La. 2008) *citing Craig v. Seima City School Board*, 801 F.Supp. 585, 594-595 (S.D. Ala. 1992), *Butler v. Rio Rancho Public School Bd.*, 341 F.3d 1197, 1200 (10th Cir. 2003) and *Reimer v. Burlington rea School Dist.,* 149 F.Supp.2d 665, 671 (E.D. Wis. 2001).  Thus, the decision to suspend a student need only not be arbitrary, lacking a rational basis or shocking to the conscience of federal judges to pass constitutional muster.[6]  *Id.*  Stated differently, under substantive due process analysis, this court's duty is to determine if the decision to suspend Ledet was supported by *any* reasonable basis. *Reimer,* 149 F.Supp.2d at 675 (citations omitted, emphasis in original).

--------

[5] 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

[6] Indeed, a Louisiana state reviewing court's obligation is limited to determining whether the findings were supported by sufficient or substantial evidence and were not arbitrary or constituted an abuse of discretion.  *McCall v. Bossier*, 785 So.2d 57, 66-67 (La. App. 2nd Cir. 2001).  Only in the absence of a rational basis may a state reviewing court substitute its judgement for that of the administrative body. *Id.*

There was nothing arbitrary or shocking about the decision to uphold Ledet's suspension.  There is no doubt the school has a legitimate interest in providing a safe environment for students and staff, which is conducive to learning. It is not unreasonable for the school to conclude that students absconding into the restroom carrying, displaying and some even tasting, a white powdery substance which looks like an illicit drug, all the while disturbing the orderly instruction of students by staff, threatens this interest.  In order to protect against this threat and further the school's interest in safety and disturbance free instruction, the court finds that there was a rational basis for Ledet's suspension. The decision was not arbitrary, nor does it shock the conscience. Accordingly, the decision did not violate Ledet's substantive due process rights.

Moreover, the decision to suspend Ledet was supported by sufficient and substantial evidence.  Based on the school's investigation, Ledet engaged in very serious and inappropriate drug-like role playing behavior which caused a disturbance at the school, having been implicated by both Godette and Brayton Leightner.  The investigation revealed that, despite his claims of innocence, Ledet had possession of the unknown substance in the plastic bag and had taken the substance into the restroom at some point during the day.  This evidence was presented at Ledet's administrative hearing through the statements of Polk-Shaw, who indicated that Godette had said that he gave the bag to Ledet and that Ledet had taken it into the restroom.  In response to Anthony's questions, Mr. Neuner additionally noted that the other

students (one of whom, according to the record before this court, was Brayton Leightner) who were involved said Ledet had the plastic bag.

Armed with this evidence, the bulk of the information collected during the school's investigation and having already heard Godette's testimony at his hearing, the administrative committee had sufficient and substantial evidence to find that Ledet had been involved with the other children, role playing as if he was in possession of an illicit drug, an offense of the most serious nature, and was therefore was justified in finding Ledet's conduct warranted punishment.

While Mr. Neuner's pronouncement of the committee's findings was neither the most precise nor the most eloquent, he nevertheless stressed that this type of pretended drug activity would not be tolerated at the school, and further stressed the serious consequences which would attach in the event that controlled substances had been involved.  This was apparently done to correct Ledet's prior behavior and to deter Ledet from engaging in any similar future conduct.  There was nothing arbitrary about the committee's decision as there was clearly a rational basis for a finding that a disciplinary violation, punishable by suspension, had occurred. Moreover, based this same evidence, there was nothing irrational, arbitrary or shocking about Superintendent Baudry's decision to uphold the suspension on appeal.  In sum, plaintiff has not shown that Ledet suffered a substantive due process violation.

Since Anthony has not shown that Jefferson's, Hamilton's or Baudry's conduct violated Ledet's constitutional rights, Summary Judgement is properly granted to Baudry, Hamilton and Jefferson on Anthony's federal individual capacity claims.

In closing, the court notes that under the circumstances presented, the actions of Jefferson, Hamilton and Baudry was objectively reasonable.[7]  Considering all of the evidence presented, it is obvious to this court that Ledet and his fellow elementary school students disrupted orderly instruction at Pesson Elementary School by role playing as if they were engaged in illicit drug activity.  It is equally obvious to this court that Jefferson, her staff, Hamilton and Baudry were obligated to correct this inappropriate behavior and to educate the students (and their parents) on the very serious consequences which the students may have faced had they not merely been role playing.

In satisfying this obligation, Jefferson and her staff took immediate and appropriate action to determine all of the participants and to ascertain the composition of the unknown white powdery substance.  It was entirely reasonable for Polk-Shaw, Green and James to immediately interview all implicated students, in Jefferson's absence, to determine the extent and nature of each student's involvement, and to notify the parents of their child's

---

[7]The undersigned declines to address the defense of qualified immunity because this affirmative defense was not raised by the defendants in their Answer. [rec. doc. 25].  Under Rule 8(c)(1), affirmative defenses generally must be raised in the first responsive pleading.  The court acknowledges that the Fifth Circuit has recently held that a "technical failure to precisely comply with Rule 8(c) is not fatal" to a defendant's claim of qualified immunity when the issue is raised "at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond", especially where the law on the topic is not clearly settled, the court declines to adopt this reasoning in the present case. *See Pasco v. Knoblauch*, 566 F.3d 572, 577-578 (5th Cir. 2009).

inappropriate behavior.  Further, Hamilton's instruction that the police be contacted so that the substance could be identified was entirely reasonable; there was no other way for the school officials to determine whether Godette had brought illegal drugs into the school, endangering himself, other students and staff.

Armed with the facts discovered through her staff's initial investigation, Jefferson acted reasonably by again interviewing the implicated students in the presence of their parents in an effort to further determine the involvement, if any, of each student in this very serious offense. As in any investigation, and even more so given this investigation concerned fifth grade students, there were admissions and denials of guilt, as well as finger-pointing by and between the students.  Jefferson exercised her best judgment as to who should be believed and who should not be believed.  Indeed, given the conflicting testimony regarding Ledet's involvement and Anthony's objection to Ledet's suspension, Jefferson scheduled an administrative hearing to further confirm the validity of her proposed discipline.

As previously noted, Hamilton's instruction that the police be contacted so that the substance could be identified was entirely reasonable; there was no other way for the school officials to determine whether Godette had brought illegal drugs into the school, endangering himself, other students and staff. Hamilton's conduct in connection with Ledet's administrative hearing was also entirely reasonable.  Hamilton heard the evidence presented and, along with the two other committee members, found that Ledet's suspension was justified.

Finally, Baudry's decision to uphold Ledet's suspension on appeal was not objectively unreasonable.  After considering all of the facts, he, like the administrative hearing committee, determined that Ledet had handled a white powdery substance not knowing what it was.  This was obviously conduct of a very serious nature, which could have resulted in very serious consequences.  Students should be deterred from glamorizing illicit drug behavior and this court finds nothing unreasonable in Baudry's decision to uphold a short term suspension to achieve that goal.

Moreover, the reasonableness of Baudry's conduct in connection with this incident is further evidenced by his implicit consent to rescind the additional disciplinary recommendations of the administrative hearing committee and to expunge the suspension from Ledet's record as a concession to Anthony and her counsel, when he was in no way required to do so.

For the reasons set forth above, summary judgment shall be granted to Jefferson, Hamilton and Baudry on Anthony's federal individual capacity claims asserted against them.

## V.  State Law Claims

In light of the above, all federal claims asserted against the Iberia Parish School Board, the  Iberia Parish School Board Members, Superintendent Baudry, Roger Hamilton and Pesson Principal Willie Mae Jefferson are dismissed.  Accordingly, no federal question remains before this court.

A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3); *Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 510 (W.D. La. 2001).  Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.  *Id. citing Bass v. Packwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999) *citing Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).  However, the dismissal should be without prejudice.  *Id*.  Accordingly, the undersigned declines supplemental jurisdiction over the state law claims asserted by Anthony.  Those claims will be dismissed without prejudice.

Signed this 5th day of February, 2010 at Lafayette, Louisiana.


C. Michael Hill
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

34